UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MIKE COSTELLO,

                Plaintiff,

                                                  ORDER AND
                                      MEMORANDUM

                                  11-CV-287 (SJ)(VVP)

               -against-


FLATMAN, LLC,
a New York limited liability company,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
A P P E A R A N C E S

ADAM SHORE
Law Office of Adam Shore PLLC
100 Park Avenue
Suite 1600
New York, NY 10017

B. BRADLEY WEITZ
The Weitz Law Firm, P.A.
18305 Biscayne Boulevard
Suite 214
Aventura, FL 33160
*Attorneys for Plaintiffs*

1

P-049

JOHNSON, Senior District Judge:

By Order dated December 27, 2012, the Court granted a motion for default judgment of Plaintiff Mike Costello ("Plaintiff") against Defendant Flatman, LLC ("Defendant" or "Flatman") and awarded Plaintiff compensatory damages in the amount of $14.31.  Plaintiff now moves to recover attorney's fees in the amount of $15,172.50, pursuant to 42 U.S.C. § 1988 and Rule 54(d) of the Federal Rules of Civil Procedure (the "Motion for Fees").  For the reasons stated below, Plaintiff's motion is denied.

## I.    BACKGROUND

A.  Proceedings Before Judge Block

On January 19, 2011, Plaintiff filed a complaint (the "Complaint") against Defendants Shahid Din d/b/a Subway® ("Subway") and Lincoln Five Realty, LLC, alleging violations of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12181, et  seq., Administrative Code of the City of New York § 8-107 et. seq. ("NY City Human Rights Law") and N.Y. Exec. Law § 296(2)(a) (the "NY State Human Rights Law").  Plaintiff, a wheelchair-bound individual, alleges that he visited the Subway restaurant located on 562 Flatbush Avenue in Brooklyn, New York and could

P-049

not access the restaurant because of its failure to comply with provisions of the ADA. [1] As such, the Complaint sought compensatory damages and attorney's fees.

On May 2, 2011, Plaintiff amended the Complaint (the "Amended Complaint") to add Flatman as a defendant in this action. Flatman, the only remaining defendant in the action, did not answer the Amended Complaint and failed to otherwise appear in the case. [2] After Plaintiff's motion, the Clerk of the Court made a notation of default against Flatman on July 12, 2011 pursuant to Federal Rule of Civil Procedure 55(a). Consequently, on May 7, 2012, Plaintiff filed a motion for default judgment against Flatman. As noted above, by Order dated December 27, 2012, the Court granted the motion for default judgment and awarded Plaintiff compensatory damages in the amount of $14.31. (Dkt No. 38.)

The only outstanding matter remaining in this case is Plaintiff's Motion for Fees which was filed on May 24, 2012. Through this motion, Plaintiff seeks to recover the attorney's fees and costs he has allegedly incurred in prosecuting this

---

[1] On the same day, Plaintiff commenced seven (7) other identical actions against small businesses within a two-block radius of Subway. See Costello v. Hai Sun Chinese Restaurant NY Inc., et al., Case No. 11 Civ. 280 (KAM) (CLP); Costello v. Miller et al., Case No. 11 Civ. 281 (ARR) (JO); Costello v. Liquor Town, Inc., Case No. 11 Civ. 282 (JG) (JMA); Costello v. Saleh 587 Food Corp., Case No. 11 Civ. 283 (SLT) (RML); Costello v. Golden Coast I Corp., Case No. 11 Civ. 284 (RRM) (RML); Costello v. Meytex Café, Inc. et al., Case No. 11 Civ. 285 (SJ) (JMA); Costello v. Ginos Son Pizza Corp. et al., Case No. 11 Civ. 286 (RJD) (JO).

[2] Defendants Lincoln Five Realty, LLC and Subway were dismissed from this case by stipulation. (Dkt. Nos. 4 and 25.)

P-049

action.  His attorneys in this action are Adam Shore of the Law Office of Adam Shore PLLC ("Shore") and and B. Bradley Weitz of The Weitz Law Firm, P.A ("Weitz").

The Motion for Fees consists of a legal brief and what appear to be attorney billing records.[3]  The papers submitted fail to authenticate the billing records in any way, by affirmation or otherwise.  The billing records purportedly reflect the amount of time spent by Plaintiff's attorneys on this case.  These records reflect that, between September 2010 and May 2012, Shore and Weitz allegedly spent 35.7 hours on this matter at an hourly rate of $425, and incurred a total of $15,172.50 in attorney's fees.[4] Before the Court is Plaintiff's application to recover this amount from Flatman, one of three named defendants.

B.  Case Reassignment and Plaintiff's Absence

The undersigned presided over one of the related cases filed by Plaintiff on the same day as this action.[5]  Thus, at my request, this case was reassigned to me on June 27, 2012.  A status conference was scheduled for June 29, 2012 and all parties were required to appear (the "First Status").  Plaintiff failed to appear at the First Status and his counsel, Adam Shore, stated that his client was in Ireland tending to a sick relative.

---

[3] The billing records fail to include basic identifying information that is common to most legal invoices.  For example, they fail to identify the client, the billing attorney name or information regarding the billing firm.

[4] See Motion for Fees, Exh. A.  (Dkt. No. 32-1.)

[5] See Costello v. Meytex Café, Inc. et al., Case No. 11 Civ. 285 (SJ) (JMA).

4

P-049

The Court requested a telephone number where Plaintiff could be reached. None was provided. The action was stayed and the Court directed Plaintiff to return to this jurisdiction to prosecute this action, which he did not do. He failed to appear at the second status conference on July 27, 2012 and then, surprisingly, both Plaintiff and Mr. Shore didn't bother to attend the third status conference on October 17, 2012 (the "Third Status").

Accordingly, the Court issued an order scheduling oral argument on the Motion for Fees for January 9, 2013 (the "Oral Argument"). The Court's scheduling order stated that if Plaintiff and his counsel failed to appear at the Oral Argument, an order would be issued requiring Plaintiff to show cause why the Motion for Fees should not be denied. On that same day, Shore filed a letter with the Court in which he apologized for his failure to attend the Third Status and stated for the first time that Plaintiff had permanently moved to Ireland.

C. Oral Argument on the Motion for Fees

On January 9, 2013, the Court held the Oral Argument and only Shore was in attendance. Shore was ill prepared for the Oral Argument. Upon inquiry, he was unable to answer simple questions about his client, including when Plaintiff moved to Ireland or his last known address prior to leaving New York. The Court inquired about how Plaintiff could justify an award of over $15,000 in attorneys' fees for a $14.31 judgment by default. Rather than detail the quality and quantity of the services

5

he and Weitz rendered, Shore stated that applicable law holds that a fee award in excess of plaintiff's recovery is permissible.

The Court inquired about Shore's relationship with his co-counsel. In response, Shore explained that he does not share an office with Weitz and that their law firms are "separate." Even despite the fact that Shore and Weitz are co-counsel in at least 42 (forty-two) ADA actions in New York and Florida, Shore did his best to distance himself from Weitz. It appeared that Shore was doing everything in his power to prevent any possibility of the Court attributing Weitz's increasingly troubling reputation to him.[6] Thereafter, the Court in methodical fashion asked Shore about each of the seven other actions filed by Plaintiff on the same day as this case. Shore confirmed that his client did file seven other actions on the same day but without any prodding stated that "[Plaintiff] is not a vexatious litigant under the law." Without citing to any legal authority, Shore argued that courts have deemed a plaintiff a vexatious litigant in instances where 70 or 80 actions were filed and that is not the case here.

---

[6] The dockets of federal courts in Florida and New York are replete with examples of Mr. Weitz's indefatigable pattern of using questionable litigation tactics. See Goodman v. Tatton Enterprises, Inc., et al., No. 10-cv-60624, Dkt. No. 150 (S.D. Fla. June 1, 2012) (a sixty-six page opinion delineating Mr. Weitz's unethical conduct in prosecuting a similar ADA case where the Court both sanctioned Mr. Weitz and ordered him to pay defendants' attorneys' fees); see also Hasday v. Brinker Fla., Inc., Case No. 04-20737 (S.D. Fla. 2004); Hirsch v. Sweet N Sour Corp., No. 10-cv-5605 (JSR) (JLC), 2011 WL 3741008 (S.D.N.Y. Aug. 25, 2011); Santiago v. Coco Nail HB, Inc., No. 10-cv-3373 (ILG) (MDG), 2012 WL 1117961 (E.D.N.Y. March 16, 2012).

P-049

The remainder of the Oral Argument concerned the $425 hourly rate charged by counsel and the 35.7 hours allegedly expended. The Court asked Shore to justify the $425 hourly rate. He was unable to do so. Shore argued that he was entitled to the $425 hourly rate because he was awarded that rate in three other actions. Shore then unilaterally conceded that he would accept a lower hourly rate of $275.[7] The Court also asked why 35.7 hours were expended when all of the pleadings in each of the eight actions filed in this Courthouse were boilerplate and nearly identical. Shore failed to justify the hours allegedly expended and could only cite to the time he allegedly took in updating the law in his pleadings. Finally, the Court inquired about why the defaulting defendant is being held accountable for the entire amount of attorneys' fees when there were initially two other defendants in this action. In response, Shore stated that "maybe there should have been an off-set in the motion for attorney's fees and there wasn't." To date, Shore has not filed a revised motion including any off-set.

---

[7] This is the rate Shore received in the action styled, Costello v. Liquor Town, Inc., Case No. 11 Civ. 282 (JG) (JMA). An identical motion for fees was filed in this action after the defendant's default. Judge Gleeson referred the motion for fees to Magistrate Judge Azrack for a report and recommendation. Plaintiff requested attorneys' fees and costs totaling over $14,000. Judge Gleeson adopted Judge Azrack's R&R in which she recommended that Mr. Shore's hourly rate be reduced from $425 to $275 and that many of the hours he expended should be reduced as "excessive." Accordingly, Plaintiff was awarded $3,875.79 in attorney's fees and costs.

P-049

## II.     DISCUSSION

### A.  The Americans With Disabilities Act

The ADA's goal is to remedy discrimination against individuals with disabilities. To that end, Title III of the ADA, requires the removal of structural barriers in existing public accommodations "where such removal is readily achievable."[8] 42 U.S.C. § 12182(b)(2)(A)(iv). Where removal of the barrier is not readily achievable, the facility must provide access "through alternative methods if such methods are readily achievable." 42 U.S.C. § 121812(b)(2)(A)(v).

To enforce Title III, the ADA contains both a private right of action, 42 U.S.C. § 12188(a), and a right of action for the Attorney General, 42 U.S.C. § 12188(b). While the Attorney General may seek monetary damages on behalf of an aggrieved party, 42 U.S.C. § 12188(b)(2)(B), the only remedies available under the private right of action are injunctive relief and the recovery of attorneys' fees and costs. 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a-3(a). By providing different remedies for public and private enforcement, Congress clearly demonstrated its intent to prevent private plaintiffs from recovering money damages under the ADA. American Bus. Ass'n v. Slater, 231 F.3d 1, 5 (D.C. Cir. 2000) ("By specifying the circumstances under which monetary relief will be available, Congress evinced its intent that damages would be available in no others.").

---

[8] The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

P-049

Some plaintiffs and their attorneys have found a way to circumvent the will of Congress by seeking money damages while retaining federal jurisdiction. Because a violation of the ADA also constitutes a violation of the NY City Human Rights Law and the NY State Human Rights Law, plaintiffs can sue in federal court for injunctive relief under the ADA and tack on claims for money damages pursuant to city or state law. This is precisely how Plaintiff has proceeded in the eight cases filed in this courthouse.[9]

### B.  Attorney's Fees

The Court has discretion to issue an award of attorneys' fees to the prevailing party to an action brought under the ADA. See 42 U.S.C. § 12205 ("[i]n any action or administrative proceeding pursuant to [the ADA], the court or agency, in its discretion, may allow a prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs.") (emphasis added); see also 42 U.S.C. § 1988 (providing reasonable attorney's fees for prevailing party in various civil rights actions, including ADA cases). Although district courts have broad discretion to determine a fee award, E*Trade Fin. Corp. v. Deutsche Bank AG, 374 F. App'x 119, 124 (2d Cir. 2010), in this Circuit, the traditional starting point is the "lodestar" calculation, Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 188-90

---

[9] In the eight cases filed, Plaintiff seeks injunctive relief under his ADA claim and seeks compensatory damages under his state claims for violations of the NY State Human Rights Law and the NY City Human Rights Law.

9

(2d Cir. 2008).  This calculation involves multiplying a <u>reasonable</u> hourly rate by the number of hours <u>reasonably</u> expended on the litigation.  <u>Id.</u> at 186.  (emphasis added).

### 1. *Reasonable Hourly Rate*

Prior to ruling on a fee application, the Court must first determine the applicable hourly rate.  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively."  <u>Arbor Hill</u>, 522 F.3d at 190; <u>see</u> <u>also</u> <u>Perdue v. Kenny A.</u>, 130 S.Ct. 1662, 1672 (2010).  The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers for reasonably comparable skill, experience, and reputation."  <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)).  Determination of the prevailing market rate may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community.  <u>Farbotko v. Clinton Cty. of N.Y.</u>, 433 F.3d 204, 209 (2d Cir. 2005).  The "community" is generally considered the district where the district court sits.  <u>See</u> <u>Lochren v. Cty. of Suffolk</u>, 344 Fed. Appx. 706, 708 (2d Cir. 2009).  When a party seeks attorney's fees, the "burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of

10

reasonably comparable skill, experience, and reputation." <u>Blum</u>, 465 U.S. at 896, n. 11.

There is nothing in the record that justifies an hourly rate of $425. The Motion for Fees does not include an affidavit attesting to counsel's experience or authenticating the billing records attached to the Motion for Fees. The only effort made to justify the requested billing rate is a single self-serving sentence from counsel in his memorandum which states "[p]laintiff's counsel have a significant amount of experience regarding disability law and the ADA, having been counsel on numerous similar type cases." (<u>See</u> Mot. for Fees at 6.) When the Court inquired about Shore's experience with ADA cases, he stated that he has "successfully" litigated over forty cases. After further inquiry, Shore admitted that of the forty, only one case went to trial.

Despite the limited evidence in the record, the Court can also seek guidance from its own knowledge of prevailing rates in this district and the rates awarded in prior cases. <u>See</u> <u>Farbotko</u>, 433 F.3d at 209 (citations omitted). The Court took the liberty of reviewing the cases filed by counsel in federal courts in New York and Florida. Nothing in the public record convinces the Court that counsel is entitled to the rate requested. As stated, <u>supra</u>, Shore has only seen one ADA case through trial. The vast majority have settled or resulted in default judgment under circumstances that do not require expertise. Moreover, even if counsel had more trial experience, the requested rate would still be too high for this district. <u>See</u> <u>Cho v. Koam Med. Servs.</u>

11

P-049

P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (observing in FLSA case that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants") (citations omitted). These facts warrant a significant reduction in the requested hourly rate.

The manner in which Shore and Weitz prosecute ADA actions also justifies a reduction in the hourly rate. The Court's research has concluded that Shore and Weitz use the same boilerplate pleadings in their ADA actions in New York and Florida. This undisputed fact exhibits the relatively unsophisticated nature of their practice. Moreover, the pleadings that they use are anything but perfect. For example, even after being admonished by a judge in the Southern District of New York for a "myriad of incorrect and inconsistent case citations", Shore elected to include the very same case citations in the instant Motion for Fees. Compare Hirsch v. Sweet N Sour Corp., No. 10-cv-5605 (JSR) (JLC), 2011 WL 3741008, at *7, n. 7 (S.D.N.Y. Aug. 25, 2011) (the "Cott Report"), with Motion for Fees at 6.[10] This is after Shore claimed that he and Weitz share separate offices.

---

[10] At the Oral Argument, the Court asked Shore why he used the same incorrect and inaccurate citations in the Motion for Fees for which Weitz was previously admonished in the Southern District. Shore responded that he "was not counsel in that case" and was "not involved in that case at all . . . and [it] has nothing to do with [him]." However, this was farthest from the truth. In fact, Shore submitted an affidavit in that action attesting to Weitz's experience in ADA cases to justify that motion for fees. (See Attorney Affirmation, Costello v. Sweet N Sour et al., 2011 WL 3741008 (S.D.N.Y. Aug. 25, 2011) (Dkt No. 28-2).) Shore went on to argue (and later re-iterate) that the Cott Report was "not upheld" by Judge Rakoff, as if to imply that the Cott Report was in some way rejected, when in reality Judge Rakoff never had

The record reflects that counsel's experience with ADA cases does not rise to the level of skill or expertise warranting an hourly rate of $425, which is far in excess of the top end $350 rate generally awarded to experienced counsel in this district. The only skill or expertise Shore and Weitz have exhibited is the ability to file near-identical pleadings without intermission throughout this country.

Under these circumstances, the Court finds that the appropriate billing rate for this default judgment action is $200.

### 2. *Hours Reasonably Expended*

Upon determining the appropriate hourly billing rate, the court calculates the hours reasonably expended. See Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998). The court examines contemporaneous time records that identify, for each attorney, the hours expended on a task, "with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d

---

the opportunity to rule on the Cott Report because Weitz quickly settled the case before action could be taken. Shore did not and cannot argue that the citations identified in the Cott Report as "incorrect and inaccurate" are not in fact incorrect and inaccurate and, for those reasons, should not have been cited for those propositions thereafter. His emphasis on the fact that the Cott Report was "not upheld" is not only irrelevant, but deliberately misleading. That the action was settled after the Cott Report exposed attorney misconduct further reinforces Weitz' modus operandi. Weitz has engaged in a pattern of settling matters when the court expresses concern about his conduct or when opposing counsel seek sanctions against him. See Rapport v. Subway Partners, Inc., Case No. 06-80523-CIV-HURLEY (S.D. Fla. 2006) (Weitz immediately settled case when the opposing party sought sanctions); Karakis v. Sobe XXI Century, Inc., Case No. 09-21113-CIV-GOLD (S.D. Fla. 2009) (Weitz filed a notice of settlement sixteen days after the defendant filed a motion for order to show cause why the plaintiff and Weitz should not be deemed vexatious litigants).

P-049

111, 116 (2d Cir. 1997); see also Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). The court may also rely on its own experience with the case, as well as its experiences with similar submissions and arguments. Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). In reducing the lodestar amount, the court subtracts any hours that are "excessive, redundant, or otherwise unnecessary." See Seitzman v. Sun Life Assurance Co. of Canada, 311 F.3d 477, 487 (2d Cir. 2002). For example, the court can make reductions where the stated number of hours is greater than what should have been required for the work produced. Id.

Shore's failure to include an affidavit authenticating the billing records is, on its own, grounds to deny fees. Even assuming arguendo that he attested to the accuracy of these records, there is no question that the 35.7 hours expended are excessive. First, the Plaintiff seeks to recover all fees and costs from one defendant when there were three. The Plaintiff proceeds in this fashion even despite the fact that he may have already received renumeration from the settling defendant, Subway, which should have been disclosed in the attorneys' fees application and off-set against the amount sought here.[11] Shore conceded that there should be an off-set, but failed to amend his motion to that effect.

---

[11] The "Stipulation For Dismissal With Prejudice" entered into between Plaintiff and Subway states that the "parties shall bear their own attorneys' fees, costs and expenses other than those specified in said confidential settlement agreement, and agree not to file any additional motions in this matter." (Dkt. No. 25) (emphasis added).

14

P-049

Therefore, Flatman would, at best, be liable for 17.85 hours of work, representing half of the fees incurred for prosecuting this action against both defendants.[12]   See Sweet N Sour Corp., 2011 WL 3741008 at *5 (holding that defendant Sweet N Sour is only liable for half of the fees incurred by Weitz in prosecution of the action); Karakis v. Argentinian Grill, LLC, No. 09-cv-61204, 2010 WL 298599, at *2-3 (S.D. Fla. 2010).   See also Harvey v. Home Savers Consulting Corp., 2011 4377839, at *7 (E.D.N.Y. 2011) ("Holding defaulting defendants liable for the entirety of the fees incurred in a litigation, or a disproportionate amount of fees, would permit some defendants to settle their case at a discount while requiring the defaulting defendants to subsidize the difference.").

However, Flatman should not even be charged with 17.85 hours of work because those hours are excessive.   For example, counsel has charged over 10 hours for conferences with his client and to "review" certain documents.   This amounts to approximately 30% of the time spent on the entire litigation.   These entries are very troubling because it is difficult to understand how Shore and Weitz managed to spend over 10 hours in conferences with a client who has apparently been in Ireland for the duration of much of this litigation.   Counsel could not even produce a telephone number for his client.   Therefore, these entries would be subject to a percentage reduction.   See Sweet N Sour, 2011 WL 3741008, at *6 (reducing all the time billed by Mr. Weitz by 25% because of vague entries for conference with client).

---

[12] The Court will not consider defendant Lincoln Five Realty, LLC in this calculation since that defendant was dismissed early in the case and there was no default entered against it.

15

Similarly excessive is the over 17 hours charged to pre-suit preparation and "drafting" of pleadings.  The Complaint, Amended Complaint, motion for entry of default, motion for default judgment and Motion for Fees are practically identical to the pleadings filed by Shore and Weitz in federal actions in New York and Florida.[13] It is clear that the "drafting" refers to counsel's efforts in cutting and pasting old defendants in place of new defendants.  Thus charging over 10 hours for "drafting" these pleadings is disingenuous at best.

C.  Spirit of the ADA

The ADA is a testament to this country's effort to protect some of its most vulnerable citizens.  It is one of the most significant federal statutes that was born out of this nation's Civil Rights movement and was enacted to ensure that disabled individuals have equal and safe access to the same benefits and accommodations as every other American.  However, a troubling reality is that cases like the one presently before the Court have the effect of being less about ensuring access for those with disabilities and more about lining counsel's pockets.

---

[13] In addition to the eight actions filed on behalf of Plaintiff, Shore has filed 21 cases in this district since 2010: 12 on behalf of Zoltan Hirsch and 9 actions on behalf of Maryann Santiago.  In the Southern District of New York, since 2009, Shore and Weitz collectively filed 19 actions on behalf of Todd Kreisler and Carr Massi.  However, separately, Mr. Shore filed 16 actions on behalf of Todd Kreisler and Carr Massi.  Whereas, Mr. Weitz filed 159 actions on behalf of Zoltan Hirsch.  In sum, since 2009, Mr. Shore and/or Mr. Weitz are listed as plaintiff's counsel in 213 ADA actions in the Southern and Eastern Districts of New York.

16

This ability to seek damages in ADA cases has given birth to what one court described as "a cottage industry." Rodriguez v. Investco, LLC, 305 F. Supp. 2d 1278, 1280-81 (M.D. Fla. 2004). Along with Florida and New York, the federal courts in California have seen a number of these types of lawsuits brought under the guise of the ADA. Things got so bad in California that the Central District of California issued an order requiring a plaintiff to seek leave before filing any additional actions. Molski v. Mandarin Touch Rest., 347 F. Supp. 2d 860 (C.D. Cal. 2004). In Molski, the Court described the plaintiff's litigation tactics as follows:

> The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA. Then, rather than simply informing a business of the violations and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed, requesting damage awards that would put many of the targeted establishments out of business. Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter.

Molski, 347 F. Supp. 2d at 863. (internal citations omitted). Perhaps this is the "skill" and "expertise" Shore and Weitz wish to value at $425 an hour.

After reviewing many of the ADA actions filed by Shore and Weitz, the Court is disturbed to find similarities with the tactics used in Molski. Nothing is more telling than the outcomes of each of the eight lawsuits filed by Plaintiff in this courthouse. Upon recently visiting each of the businesses that were named defendants in Plaintiff's eight lawsuits, the Court was shocked to see that most if not all of the alleged

17

structural deficiencies preventing access to persons with disabilities still exist.[14]  More troublesome is the fact that the Court's best efforts have failed to prove that an individual named "Mike Costello" exists, is wheelchair-bound and has visited any of those establishments.   However, assuming that Plaintiff does in fact exist, these lawsuits have done nothing to ensure that he or any other disabled person will have equal access to any business named as a defendant.

The Court does not highlight the observed structural deficiencies to invite more lawsuits against these businesses.  In fact, many of the ADA-violations alleged in the complaints filed by Plaintiff did not even exist in the first place.  For example, in the Amended Complaint, Plaintiff alleges that Subway fails to provide a wheelchair accessible restroom.  However, during the Court-initiated trip, it was observed that the Subway had no restroom at all.[15]  The Court only mentions this to bring attention to the troubling litigation tactics used by Mr. Shore and Mr. Weitz.  This is indicative of the mendacious conduct that is central to counsel's litigation scheme.  This conduct arguably violates the Rules of Professional Conduct.  See Rules of Prof'l Conduct R. 8.4 ("A lawyer or law firm shall not . . . engage in conduct involving dishonesty,

---

[14] On March 14, 2013, the Court visited each of the eight defendant-businesses on Flatbush Avenue in Brooklyn that were sued by Plaintiff on January 19, 2011.  The instant decision does not rest entirely on this visit, but the Court does take judicial notice of the building conditions observed.  See Fed. R. Evid. 201(b).

[15] In his affidavit, Plaintiff states that he was denied access to the Subway because of a step in front of the premises.  The Court observed that this step still exists, thereby preventing wheelchair access.  He also states that after retaining counsel, he was "advised that there are other violations of the ADA . . . within the store."  (Dkt. No. 36).  Thus, by Plaintiff's own admission, Shore and Weitz were the ones who identified the other violations.  Some of those violations, including the ones cited in the bathroom, appeared to never exist at all.

18

fraud, deceit or misrepresentation."); United States v. Small, 2007 WL 2293028, at *6 (E.D.N.Y. Aug. 9, 2007) ("[A]n attorney who engages in misconduct violating the Disciplinary Rules is not entitled to legal fees for any services rendered.") (collecting cases).

Shore may attempt to disassociate himself from his co-counsel by stating that they share different law offices, as he did at the Oral Argument, but this Court is very well aware of their long history of working together on ADA cases in both New York and Florida. Their "means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." Molski, 347 F. Supp. 2d at 863. (internal citations omitted).

### III.    CONCLUSION

Those who take on the honorable cause of representing disabled individuals must recognize that they not only represent their fellow lawyers of the bar, but also the legal giants who paved the way for passage of crucial civil rights legislation like the ADA. One such legal giant, Charles Hamilton Houston, famously said that "a lawyer is either a social engineer or he's a parasite on society." The conduct of counsel is indicative of a parasite disguised as a social engineer. It must stop.

The Court puts Shore and Weitz on notice that these tactics will no longer be tolerated. If they continue to take on this noble cause, they must do it with the integrity and ethics required of all lawyers, irrespective of practice area. The Court

will not be shy about informing the appropriate state bar authorities and chief judges across this country should Shore and Weitz unadvisedly continue to litigate in this fashion. See United States v. Morales, No. 07-cr-460 (SJ), 2010 WL 2400120 (E.D.N.Y. June 11, 2010).

Accordingly, Plaintiff's motion is denied with prejudice.


SO ORDERED.

Dated:  Brooklyn, New York
March 28, 2013                                    _____
                                                 Sterling Johnson, Jr., U.S.D.J.

P-049